UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. |
| | ) | |
| v. | ) | (JUDGE          ) |
| | ) | |
| | ) | |
| REAL PROPERTY LOCATED AT | ) | |
| 190 FIRE WORKS LANE, FORKSON | ) | |
| TOWNSHIP PENNSYLVANIA, and | ) | |
| | ) | |
| REAL PROPERTY LOCATED AT | ) | |
| 250 FIRE WORKS LANE, FORKSON | ) | |
| TOWNSHIP PENNSYLVANIA, | ) | |
| | ) | |
| Defendants. | ) | (Electronically filed) |

## COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, by and through its attorneys, Gerard M. Karam, Acting United States Attorney for the Middle District of Pennsylvania, and Sean A. Camoni, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.     Plaintiff, United States of America, alleges the following upon information and belief for its claim against the defendant real properties (hereinafter "defendant properties"), pursuant to 21 U.S.C. §

881(a), and 18 U.S.C. § 981(a)(1)(C).

## THE DEFENDANTS IN REM

2.     The defendants are real properties known and numbered as 190 Fire Works Lane, Forkston Township Pennsylvania, 18629, and 250 Fireworks Lane, Forkston Township Pennsylvania, 18629, with all appurtenances, improvements, and attachments thereon, and is more fully described in Attachment A.

The record owner of the defendant real property located at:

190 Fireworks Lane, Forkston Township Pennsylvania, 18629, is

Anthony Donnora Sr.

The record owner of the defendant real property located at:

250 Fireworks Lane, Forkston Township Pennsylvania, 18629, is

Anthony Donnora Jr.

The following may have interests in the defendant real properties:

Anthony Donnora Sr. and Anthony Donnora Jr.

3.     The defendant real properties have not been seized but are located within this district and within the jurisdiction of the Court. The United States does not request authority from the Court to seize the real property defendants at this time. The United States will, as

provided by 18 U.S.C. § 985(b)(1) and (c)(1):

    a.  post notice of this action and a copy of the Complaint on the defendant real properties, and

    b.  serve notice of this action on the defendant real property owners, and any other person or entity who may claim an interest in the defendant real properties, along with a copy of this Complaint, and

    c.  file a Lis Pendens against the defendant real properties.

**JURISDICTION AND VENUE**

4.    Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant real properties.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.    This Court has *in rem* jurisdiction over the defendant real properties:

    a.  pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district;

b.  pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28
    U.S.C. § 1395, because the action occurred in this
    district;

6.  Venue is proper in this district:

a.  pursuant to 28 U.S.C. §1355(b)(1) because the acts or
    omissions giving rise to the forfeiture occurred in this
    district; and

b.  pursuant to 28 U.S.C. § 1395(b) because the property is
    located in this district.

## BASIS FOR FORFEITURE

7.  The defendant real properties are subject to forfeiture
pursuant to 21 U.S.C. § 881(a), because they are real property,
including any right, title, and interest (including any leasehold interest)
in the whole of any lot or tract of land and any appurtenances or
improvements, which is used, or intended to be used, in any manner or
part, to commit, or to facilitate the commission of, a violation of this
subchapter punishable by more than one year's imprisonment.

The defendant properties are subject to forfeiture pursuant to 18
U.S.C. § 981(a)(1)(A), because they constitute property involved in a

transaction or an attempted transaction in violation of section 1957 of title 18, United States Code, or is property traceable to such property.

### FACTS

8.     All of the facts alleged in this Complaint are based upon information and belief, the sources of which are Brandon T. Gallucci, Special Agent with Homeland Security Investigations ("HSI"), resulting from an investigation into the criminal activities taking place within the defendant properties.

9.     On or about the morning of October 20, 2021, Pennsylvania State Police ("PSP") and Emergency Medical Services ("EMS") personal responded to a call regarding a deceased person at 190 Fireworks Lane, Forkston Township Pennsylvania, 18629, (hereinafter "Subject Premises A"). The deceased Aaron Allen Milliron, had passed away from an apparent drug overdose in the basement apartment where he resided alone. Milliron was an employee of Anthony Donnora Sr., as a wood Cutter for one of Donnora Sr.'s businesses, Firewood by Donnora, located at 250 Fireworks Lane, Forkston Township Pennsylvania, 18629 (hereinafter "Subject Premises B"). The Wyoming County Coroner's report lists Milliron's death as a accidental overdose caused

5

by the combined effects of gabapentin and fentanyl.

10.    On or about December 21, 2022, EMS was called to service at 165 Robinson Road, Mehoopany Pennsylvania, 18629, regarding a deceased person identified as Thomas Gerald Merritt. Pennsylvania State Police ("PSP") Trooper Robert Richter observed Merritt deceased on the front porch with a cigarette pack within arm's reach containing 3 baggies suspected to be heroine. The Wyoming County Coroner's report listed Merritt's cause of death as an accidental overdose due to the combined pharmacological effects of fentanyl and methamphetamine. Merritt had recently obtained work splitting wood for Donnora Sr.

11.    Pursuant to a search warrant served to Facebook Inc, PSP Trooper Richter was able to gain access to Merritt' Facebook account and found evidence through his messages, that he was selling, bartering, buying, and trading various controlled substances with multiple persons including but not limited to heroin, methamphetamine, Subutex, Xanax, and Percocet ("Percs"). In one particular conversation coordinating the sale of Percs, Merritt mentioned to a subject, that if he needed more Percs, it's 3 miles away at his boss's house.

6

12.    In December 2021, Wyoming County District Attorney's

Office ("WCDAO") Chief Detective and HSI Task Force Officer (TFO)

David Ide, interviewed a witness ("W1"), who stated that Donnora Sr.,

would frequently use their vehicle for what they believed Donnora Sr.

used to deliver Percocet pills to various customers.

13.    On or about April 13, 2022, the Tunkhannock Borough Police

Department ("TBPD") arrested Sarah Puterbaugh for driving under the

influence. The vehicle she was driving was registered to Donnora Sr. at

Premises A, and several pills in the color of blue, pink, green and white,

were found inside the vehicle. Lab results proved that the pills

contained fentanyl, alprazolam, etizolam, buprenorphine, and

bromazolam.

14.    On or about July 1, 2022, the TBPD and EMS responded to a

call regarding an unresponsive person at the Prince Hotel located at E.

Tioga Street, Tunkhannock Borough Pennsylvania, 18657. The

unresponsive person was identified as Kathryn Bruce and attempts to

revive her were negative and she was pronounced dead at the scene.

Bruce's death was determined to be the result of an overdose. Prior to,

on or about May 12, 2022, Bruce was furloughed via Court order, to

attend in-patient treatment at Pyramid Drug and Alcohol Treatment
Facility in Duncansville, Pennsylvania. She removed herself from the
treatment facility on June 30, 2022, against the medical advice of her
counselor. On July 21, 2022, HSI TFO Ide, interviewed a witness ("W2")
regarding Bruce's overdose death. W2 stated that they were a patient at
the same treatment facility at the same time as Bruce. W2 revealed
that Bruce was receiving Percocet pills while attending the
rehabilitation program and had a history of obtaining the pills from
Donnora Sr. W2 also revealed that Bruce temporarily resided with
Donnora Sr. who would provide Bruce with Percocet in exchange for
sex. W2 detailed their own experience with Donnora Sr. stating that
Donnora Sr. did the same thing to them from approximately age 13
saying that "He would give me anything, Percocet, Marijuana, Heroin,
whatever, to get you addicted or to keep you addicted, to have sex."

15.    On August 11, 2022, HSI TFO Ide, interviewed a witness
("W3") who stated that they're a drug addict and former employee of
Donnora Sr. who recently resided with Donnora Sr. at Subject Premises
A. W3 detailed how Donnora Sr. frequently provided them with
Percocet pills in exchange for sex adding that he maintains thousands

of Percocet pills containing fentanyl at Subject Premises A and sells to hundreds of people. W3 also stated that Donnora Sr. forces woman to have sex with him in exchange for pills and that he once refused to pay them for 3 weeks because they refused to have sex with him for pills. W3 stated that Donnora Sr. frequently sells the Percocet pills and launders money.

16.     On August 11, 2022, HSI TFO Ide conducted a follow up interview with W2 and revealed that Donnora Sr. provided Bruce with the fentanyl laced pills that caused her overdose death. W2 stated that Donnora Sr. controls her prescriptions, namely Klonopin, in exchange for sex. The last time she had had sex with Donnora Sr. was on or about July 9, 2022. W2 stated that Donnora Sr. purchased a home for them 7 years prior in an effort to keep silent about the ongoing sexual relationship in exchange for drugs. Donnora Sr. also started two college funds each in the amount of $10,000 USD for their two children. W2 mentioned that they moved in with Donnora Sr. at approximately age 16 once their mother was arrested for selling heroine on Donnora Sr.'s behalf.

17.     W2 shared that Donnora Sr. has been involved with an

unknown male co-conspirator from New York for approximately two years. W2 stated that the pills are ordered through the "Dark Web" and shipped from Canada to the co-conspirator's residence in New York. The co-conspirator then delivers the pills to Donnora Sr.'s business Subject Premises B (Fireworks by Tony Donnora, Inc.), in exchange for fireworks. Donnora Sr. provides the co-conspirator with quarter sticks of dynamite in exchange for the pills in which Donnora Sr. sells to various customers.

18.    In an interview conducted with a witness (W4) conducted by by HSI TFO Ide on or about August 11, 2022, W4 stated that they purchased heroin, Percocet, methamphetamine, and other controlled substances from Donnora Sr. for decades and that for the past two, Donnora Sr. has paid them money to remain silent about his involvement in maintaining young women's drug addictions in exchange for sex. W4 also stated that Donnora Sr. launders the proceeds of his controlled substance sales through his fireworks business at Subject Premises B.

19.    On or about August 31, 2022, HSI TFO Ide conducted a follow up interview with W3 and stated that they had been working for

Donnora Sr. since March 2022 and stated that Donnora Sr. withheld

their last paycheck in an attempt to coerce them to have sex with him.

W3 stated that Donnora Sr. routinely offers them Percocet and Xanax

pills which he keeps in a large bag and sells to local and out of state

customers daily.

20.   W3 also states that a subject by the name of Cody Westbrook

currently resides in the basement of Subject Premises A and that

Westbrook sells Percocet pills on Donnora Sr.'s behalf. W3 also stated

that Merritt sold Percocet pills for Donnora Sr. prior to his overdose and

is aware that Donnora Sr.'s Percocet pills contain fentanyl.

21.   W3 stated that the work completed for Donnora Sr. included

placing stickers on fireworks and counting pills he kept in the large bag

previously described. W3 stated that Donnora Sr. kept the pills locked

in a safe at Subject premises A which is stored inside a room secured by

a padlock. W3 also states that they observed customers pay $800.00

USD and $100,000.00 USD in exchange for pills. W3 also said that

Donnora Sr. has had people obtain bank loans in their name and pay

him a percentage of the loan, using the loans as a mechanism for

laundering thousands of dollars.

22.    W3 verified that Donnora Sr. does have a fireworks business (Fireworks by Tony Donnara, Inc.), Subject Premises B, and that Donnora Sr. keeps larger, illegal explosives in a separate building on his property, located with the shared curtilage of Subject Premises A and Subject Premises B. W3 stated that Donnora Sr. sells the illegal fireworks to people from other states and that he frequently receives packages from China.

23.    On or about September 6, 2022, HSI TFO Ide interviewed a witness ("W5") who stated that they had a long-standing controlled substance addiction and connection to Donnora Sr. W5 stated that Donnora Sr. manufactures and sells pills at Subject Premises B. W5 stated that they were at Donnora's property while subjects from West Philadelphia and Reading Pennsylvania, arrived with Fentanyl. W5 stated that they observed the aforementioned subjects, Donnora Sr., and Donnora Sr.'s runners, utilizing a pill press to manufacture the pills. W5 also stated that Donnora Sr. sells the pills as "Oxy 30's" but the pills are actually manufactured with pure fentanyl and fillers such as acetaminophen.

24.    W5 also states that they've frequented Donnora's Sr.'s

12

property for "that last couple years, but he's (Donnora Sr.) been doing that stuff long, long before that." W5 stated that drugs are traded for sex at Subject Premises A and that Donnora Sr. has been trading controlled substances to women in exchange for sex for decades. W5 also states that Donnora Sr. financially provides for the women to keep them quiet and that some of the women sold drugs for Donnora Sr. W5 additionally stated they're certain that Merritt was selling pills for Donnora Sr. prior to Merritt's death and says the "The night before he (Merritt) dies, at one o'clock in the morning, he told me he got them from him (Donnora Sr.). I'm sure there were other things in his system, but the Fentanyl definitely came from him (Donnora, Sr)."

25.    W5 also stated that all runners have guns and observed the firearms when at Subject Premises A while the fentanyl pills were being manufactured. W5 states "There have been so many people involved. The selling of drugs, the pressing of the pills, the sex for drugs things, for so many years. That's not counting the Fireworks/explosives stuff."

26.    On or about September 13, 2022, HSI TFO Ide interviewed witness ("W6") regarding Donnora Sr.'s criminal activities. W6 stated that they're a former heroin addict who was in need of a place to stay

and was introduced to Donnora Sr. through a third party and that they could rent a room at Subject Premises A in addition to working for Donnora Sr. W6 stated that Donnora started asking for sex as soon as they moved into Subject Premises A and routinely provided Percocet pills and asked for sex. W6 stated that they never had sex with Donnora Sr. but that "He was relentless and never stopped, holding the pills over me."

27.     W6 stated that work for Donnora Sr.'s business included doing the books for his fireworks business, Subject Premises B, weed eating around his house and giving him rides. W6 stated "Sometimes he would pay me a couple a bucks, but mostly he paid me in pills." W6 stated that Donnora kept thousands of pills in large bags stored in a padlocked office at Subject Premises A. W6 has also stated that they've seen people buy pills from Donnora Sr., "by the thousands" and that Donnora Sr. calls the pills "Perc 30's" but W6 knows they are fentanyl.

28.     W6 also describes Donnora Sr.'s fireworks business as a sham and that while Donnora Sr. sells some fireworks, he would create false sales invoices for thousands of dollars in fireworks, knowing they were never solid. W6 also states that Donnora Sr. stored red

phosphorous used to manufacture illegal fireworks at Subject Premises B and that the red phosphorous and illegal fireworks are in a warehouse building located on the shared curtilage of Subject Premises A and Subject Premises B that is not open to the public. W6 also recalls that Premises A was recently burglarized and while Donnora Sr. claims that nothing was stolen, W6 is certain an illegal handgun was taken.

29.    On or about September 15, 2022, HSI TFO Ide interviewed a witness ("W7") regarding Donnora Sr.'s criminal activities. W7 stated they've maintained contact with Donnora Sr. over the past several years and is friends with Mike Walters a current employee of Donnora Sr. W7 stated that they're aware that Donnora Sr. is currently selling crystal methamphetamine, Percocet pills, valium, and pure fentanyl and while W7 has never purchased from Donnora Sr. they know numerous other subjects who have. W7 states that Donnora Sr. provides women with controlled substances in exchange for sex and then "buys them things to keep them quiet." W7 provided the name of a female subject previously identified during the investigation as one of those women.

30.    On or about October 17, 2022, HSI Special Agent ("SA") Adam Rodriguez and HSI TFO Ide, interviewed a cooperating witness

(C1) regarding Donnora Sr.'s criminal activities and stated that they

met Donnora Sr. through Bruce in August of 2021. CI stated they

purchased pills at Subject Premises A and provided them to Bruce on

numerous occasions up until Bruce's overdoes death on or about July 2,

2022.

31.    C1 states that the pills he sold for Donnora Sr. were Xanax

typically for $10.00 USD per pill, and "Perks" for $25.00 USD per pill.

C1 stated that they'd transport Bruce to Subject Premises A where

Bruce would directly obtain pills from Donnora Sr. and would travel

alone to the Premises when Bruce as not feeling well enough to

accompany them. C1 stated that that first time they travelled to Subject

Premises A alone to purchase pills for Bruce was on or about August 18,

2021. C1 stated that they provided the pills to Bruce on the same day

and observed Bruce crush and snort the pills for the first time in their

presence.

32.    C1 stated that Bruce asked them for $2,500.00 USD on or

about September 6, 2021. C1 believed Bruce needed the money for bills

and Court fees. C1 stated that they provided the money to Bruce and

gave her a ride to Subject Premises A later that day. C1 stated that

they were unaware that Bruce had taken the $2,500.00 USD into Subject Premises A, C1 stated that Donnora Sr. exited the Subject Premises A a short time later handing over a bottle containing approximately 100 pills. C1 stated Donnora Sr. told said to ration the pills to Bruce so that she would no take too many at a time. C1 stated Bruce became angry because Donnora Sr. did not provide the pills directly to her so C1 gave Bruce the entire bottle.

33.    C1 stated that he made another large pill purchase from Donnora Sr. in the amount of $1,500.00 USD approximately two weeks after the $2,500.00 USD transaction on September 6, 2021. C1 stated that they continued to purchase pills from Donnora Sr. and provided them to Bruce until her overdose death in July 2022. C1 stated that they obtained pills from Donnora Sr. approximately 60 times in total. C1 stated Donnora Sr. kept pills he sold in a locked cabinet inside Subject Premises A, or a pill box carried in his pocket.

34.    On or about May 12, 2022, Bruce was furloughed via court order to attend in-patient treatment at Pyramid Drug and Alcohol Treatment Facility in Duncansville, Pennsylvania. C1 stated that Bruce asked them to mail pills to her while in treatment. C1 stated that they

17

traveled to Subject Premises A and paid Donnora Sr. $300 USD for a mix of Xanax and "Perks" and mailed the pills which were concealed in a sweatshirt to Bruce. C1 stated that Bruce called and confirmed the receipt of the pills. C1 stated that on June 30, 2022, they transported Bruce from the treatment facility after she tested positive for controlled substances and decided to remove herself.

35.    On July 1, 2022, at approximately 7:30 or 8:00 a.m., C1 stated that along with Bruce, they went to Subject Premises A where Bruce traded Subutex for "Perks" with Donnora Sr. At approximately 10:00 am., C1 and Bruce arrived at the Prince Hotel in Tunkhannock Pennsylvania, and both entered the hotel at approximately 11:00 a.m. and had breakfast together. Between 12:00 and 1:00 p.m., CI observed Bruce crush and snort three pills that she obtained from Donnora Sr. and left her in the room for a couple of hours. When C1 returned at 2:00 p.m., they observed Bruce on the floor and sat her on the bed and had her drink coffee before she fell asleep. C1 stayed with Bruce until approximately 5:30 p.m. and offered to bring her something to eat but she declined. C1 returned at approximately 6:20 p.m. and found Bruce lying on the floor. C1 told Bruce to wake up and eat but she did not

respond. C1 left the room for a few minutes and upon their return, shook Bruce's shoulder to wake her up, but she did not respond. C1 called 911 but first responders were unable to resuscitate Bruce.

36.    C1 called Donnora Sr. and told him that Bruce was dead and Donnora Sr. replied, "Oh well that was going to happen anyway." C1 replied to Donnora Sr. stating "Well you know, it happened" and hung up on Donnora Sr. C1 stated that Donnora Sr. visited him on or about July 5, 2022, wanting to discuss Bruce's overdose death and told C1 no one knows anything and not to talk. C1 stated that a few days following July 15, 2022, they went to Subject Premises A and met with Donnora Sr. who stated that "Nobody knows nothing. Nobody knows you, your name, or your face." C1 stated that Donnora Sr. gave him $15,000.00 USD per an agreed upon sum of money for a property transaction proposed by Donnora Sr. approximately 12 months prior. C1 stated that Donnora Sr. offered to purchase an acre of land from them for the aforementioned amount but C1 delayed the transaction because they weren't comfortable with Donnora Sr. On or about January 5, 2023, at Subject Premises A, after Donnora Sr. became paranoid after local community members were speaking about Bruce's overdose death in

connection to Donnora Sr., C1 stated that Donnora Sr. confirmed giving

Bruce three pills on or about the date of her overdose death.

37.    On or about February 3, 2023, HSI TFO Ide and HSI SA

Rodriguez, conducted a follow-up interview with W6 who stated that

they made approximately 8 bills of landing while working for Donnora

Sr. and that each fake invoice listed approximately $12,000.00 -

$15,000.00 USD in fireworks that were never sold. W6 recalled two

companies listed on the fraudulent bills of sale: "Pizza Paul Fireworks,

and UE Fireworks" and that each of the fraudulent invoices were

created on the computer in Donnora's Sr.'s home office. W6 also stated

that invoices for legitimate fireworks sales were created inside

Donnora's business facility, Subject Premises B. W6 stated that they

observed three handguns inside Donnora Sr.'s residence and advised

the firearms belong to Donnora Sr. and stored in the firearms in a safe

inside his home office.

38.    On or about February 9, 2023, HSI SA Rodriguez reviewed

the death certificate of Bruce. The death certificate lists July 1, 2022, as

the date of Bruce's death. The immediate cause of death is listed as

fentanyl overdose.

39.    On or about April 6, 2023, Donnora Sr. met C1 at C1's place of business and had a discussion regarding C1's criminal charges and the overdose death of Bruce. C1 stated that Donnora Sr. went on to speculate that the pills he provided to Bruce could not have killed her because she used to take "6,7,8 at a clip." CI reiterated that Bruce was with them on the date of the overdose and that the only substance she obtained was provided by Donnora Sr. Donnora Sr. agreed to provide C1 with $2,000.00 - $2,500.00 USD for assistance with legal fees at a later date. On or about April 8, 2023, Donnora Sr. met CI at his place of business and stated "They don't have nothin'. They don't know nothin." C1 stated that Donnora Sr. said that even if somebody said that C1 was there, C1 could have said "Hey, come to get the fuckin' mail. You know what I mean?".

40.    C1 says that Donnora stated "I know you're trying to protect me and you're trying to protect yourself. But you, you can't involve me, because if you did, then I would have to tell the truth" To which C1 replied "Whatever the truth is, the truth is. I mean I brought her to you, and she got whatever she got from you. Whatever it is. It's the same thing. You know when, there were times when her father would call you

and tell you, 'Sometimes I wish you would just stop giving it to her'. I wouldn't be even in this situation because I don't do all of these things, I mean. I wasted so much money too, I mean, you know that". Donnora Sr. then stated regarding Bruce "She was so much a drugee before she even met me. That's why I got rid of her, because of the drugs."

41.   The conversation soon shifted to discuss Cheyenne Salsman. Donnora Sr. said "The Cheyenne Salsman, the girl that lives in the cellur, she went to David Ide and said I was sellin' these little blue pills. You know what I mean?" C1 asked Donnora Sr, if he provided the pills to Cheyenne Salsman and Donnora Sr. replied, "Yeah she bought the pills off me." Donnora stated that she tried to get him in trouble because he had her use his Discovery card and AA card to buy stuff for him and she started using it for herself and racked up between both cards fort-five hundred dollars' worth of stuff. Donnora Sr. also stated that she stuck him for $6,000 of rent. Donnora also mentions that David Ide told Sarah, Donnora's girlfriend, "Do me favor, go down there and set Tony up. Buy a couple pills off him, and we'll get him." The conversation later transitions back to Bruce's overdose with C1 stating "I wish Katy was still alive" with Donnora Sr. replying "Oh, yeah, I

didn't want nothin' to happen to her, but like I said, I couldn't handle her". C1 replies saying that the whole point is that she's dead now. C1 thanked Donnora Sr. for the money and said "Like I said, when you get outta' this mess and everything, we can just put that like toward the land that you charged me seventeen for it. You know what I mean?" Donnora Sr. departed the area shortly thereafter.

42.    On or about June 13, 2023, HSI TFO Ide and HSI SA Rodriguez interviewed witness ("W8") and said that they met Donnora Sr. when they were in high school. W8 stated that they moved into Subject Premises A and assumed fulltime employment under Donnora Sr. around May of 2022. W8's duties included but weren't limited to unloading shipping containers containing fireworks from China and counting and sorting the blue pills sold by Donnora Sr. W8 stated that the blue pills received by Donnora Sr. were contained in UPS boxes. W8 stated that Donnora Sr. would charge $25.00 USD per pill and that Donnora Sr. offers a deal in which W8 obtained 50 pills for $1,000.00 USD. Although Donnora Sr. fronted W8 pills, Donnora Sr. would get pissed because W8 was not working enough to pay him back for the pills. W8 said that he routinely obtained $1,000.00 USD in pills and

knew that they were on the radar of this investigation and how they're "sketched out" by Donnora Sr. and how Donnora Sr. knows their entire family and even though W8 doesn't believe that Donnora Sr. could cause harm directly, he'd use others to carry out violent acts on his behalf. W8 states that Donnora Sr. doesn't sell just the little blue pills but also methamphetamine. W8 went on to say that women who worked for Donnora Sr. included Ashley, Tara, and Sarah and that each of the women had sex with Donnora Sr. in exchange for controlled substances. W8 also confirmed that they worked for Donnora Sr. during the same period as Salsman and advised that she performed sex acts with Donnora Sr. in exchange for drugs and resided in Donnora Sr.'s basement.

43.    W8 also stated that they worked as Donnora Sr.'s daily driver for a while and began driving Donnora Sr. after Merritt who was his cousin. W8 went on to say that duties for Donnora Sr. included transporting him to various locations for drug deliveries. W8 stated that they drove Donnora Sr. to several locations to deliver controlled substances to include Prince Hotel in Tunkhannock and a Long John Silver's restaurant in Kingston. W8 mentioned that Donnora Sr. would

deliver drugs to a female subject at the Prince Hotel and also stated that "I heard he sold that Katy girl to the owner of the Prince. He practically sold her to him, and she ended up dead."

44.    W8 stated that Donnora Sr. has a warehouse of "Class D" fireworks located on Subject Premises B. W8 also states that Donnora Sr. stashes illegal fireworks and drugs in storage sheds located in the woods on the shared curtilage of Subject Premises A and Subject Premises B. W8 stated a trail led to the storage buildings. W8 also observed Donnora Sr. with two handguns and that he stores one of them on top of his refrigerator inside of his residence. W8 also said that Donnora Sr. has safes in his office, stating "They're full of everything you could ever imagine coke, meth, pills, money" and that Donnora Sr. also sells green "Xani-bars" and that the Xanax pills are pure fentanyl. W8 stated that the last time they spoke to Donnora Sr. was when they called Donnora Sr. from jail seeking assistance with bail money. W8 said that Donnora Sr. refused to help because W8 owed a debt of approximately $10,000.00 USD from times Donnora Sr. would front them $500.00 USD in pills at a time.

45.    W8 stated that Donnora Sr. planned to stop selling drugs

approximately one year ago because he knew he was under investigation. W8 stated that they were living with Puterbaugh at the time and that Puterbaugh advised Donnora Sr. that law enforcement questioned her about illicit activities. W8 states that they drove Donnora Sr. to Puterbaugh's residence and advised that they overheard Peterbaugh telling Donnora Sr., "It has to stop" and that Puterbaugh was "bawling" and "hysterical" during her conversation with Donnora Sr. W8 verified that they worked for Donnora Sr. from May 2022 to October 2022 and estimated that they began obtaining drugs from Donnora Sr. in 2021. W8 stated that Donnora Sr. used to sell cocaine as well and referred to it as "garbage coke".

46.    On or about August 24, 2023, HSI TFO Ide interviewed a Wyoming County Confidential Informant ("WCCI1") regarding Donnora Sr.'s criminal activity. WCCI1 stated he/she has been purchasing blue colored pills containing fentanyl from Donnora Sr. at the Subject Premises for approximately two years. WCCI1 advised that Donnora Sr. sells Fentanyl pills for $30-$35 USD each.

47.    On or about August 25, 2023, the Wyoming County DA's office with the assistance of the PSP and the Wyoming County Sheriff's

office interviewed confidential informant (C2). C2 stated that he/she

routinely purchases blue pills containing Fentanyl and

methamphetamine from Donnora Sr. at Subject Premises A. C2 also

stated that they purchased illegal fireworks from Donnora Sr. and

described the fireworks as quarter, half, and full sticks of dynamite. C2

also states that the illegal fireworks are stored in sheds located near

Subject Premises A and Subject Premises B.

48.    C2 stated that Donnora Sr. previously asked them to

purchase two handguns on Donnora Sr.'s behalf, provide them to

Donnora Sr., and then report them stolen. C2 did not follow through

with the purchase of the firearms because Donnora Sr. stated that he

wanted a previous employee of his, Salsman, dead. C2 explained that

Donnora Sr. is angry with Salsman because he believes she spoke to

HSI TFO Ide regarding this investigation.

49.    C2 stated on one occasion that they drove Donnora Sr. to a

Long John Silver's restaurant in Luzerne County Pennsylvania where

Donnora Sr. obtained "thousands" of fentanyl pills from an unknown

female subject. C2 states that Donnora Sr. "gets these girls and guys

addicted, then he owns your soul." C2 goes on to explain that Donnora

Sr. has sex with female addicts in exchange for Fentanyl pills and forces male addicts to complete work or owe a debt in exchange for Fentanyl pills. C2 also states that a female subject by the name of Donna Pozzi, who owns a flower shop in Towanda, Pennsylvania, sells fentanyl pills for Donnora Sr. and that they traveled to the flower shop and purchased fentanyl pills directly from Pozzi. C2 states that Pozzi is currently residing with Donnora Sr. at Subject Premises A.

50.    On or about August 25, 2023, HSI TFO Ide, Wyoming County Sheriff's Office Deputy Patrick Butkiewicz, and PSP Trooper Richter utilized C2 to conduct a controlled purchase of Fentanyl pills at Subject Premises A. C2 contacted Donnora Sr.'s employee Roger Coello and discovered Donnora Sr. had been hospitalized. Coello contacted Donnora Sr. via telephone and coordinated the narcotics transaction. Coeloo advised C2 that if they paid off the drug debt of $1,000.00 USD to Donnora Sr., C2 would be provided with a small "sample" of blue pills. C2 traveled to Subject Premises A and entered and met with Donnora Sr.'s daughter-in-law, Tasha Donnora. Donnora Sr.'s Son, Donnora Jr., was also present during the transaction. C2 handed Tasha Donnora $1,000.00 USD. Tasha Donnora handed C2 a plastic baggie

containing six blue pills, several pieces of partial pills, and blue colored
powder suspected to contain fentanyl. The suspected controlled
substance was entered into evidence following the controlled purchase.
The evidence was retained by HSI TFO Ide and sent to the PSP Crime
laboratory in Pittston Township, PA for testing.

51.     On or about August 26, 2023, during the evening hours,
Coello appears at C2's residence and informed C2 that Donnora Sr. was
to be released from the hospital on Monday, August 28, 2023. Coello
advised Donnora Sr. wanted to see C2 upon his return to Subject
Premises A.

52.     On August 29, 2023, HSI TFO Ide, Trooper Richter, Trooper
Nathan Lewis, Deputy Butkiewicz, and HSI SA Gallucci, utilized C2 to
conduct an additional controlled purchase of narcotics at Subject
Premises A. Upon meeting at a prearranged location, C2's person and
vehicle were searched and found free of any contraband or money. C2
was provided with $850.00 in prerecorded serialized U.S. Currency from
the WCDAO Drug Fund and followed to Subject Premises A. C2 was
observed entering Subject Premises A and was then observed exiting
Subject Premises A and was followed to the prearranged meeting

29

location. While inside Subject Premises A, C2 was provided with two clear zip lock bags from Donnora Sr. One contained 11 blue colored tablets and the other contained blue colored powder with remnants of blue colored pills in an unknown quantity. In exchange for the two zip lock bags, C2 provided Donnora Sr. with the aforementioned $850.00. C2 mentioned that Donnora Sr. stated $840.00 was for the 2 zip lock bags and that the extra $10 was for the purchased made on August 25, 2023. The two suspected bags of fentanyl were provided by C2 to HSI TFO Ide and was entered into evidence following the controlled purchase. The evidence was retained by HSI TFO Ide and sent to the PSP Crime Laboratory in Pittston Township for testing. Lab results revealed that the eleven tablets contained heroin, fluorofentanyl, fentanyl, and with the powder with tablet fragments coming back as fluorofentanyl, fentanyl, and methamphetamine.

53.    On September 7, 2023, HSI TFO Ide, Trooper Richter, and HSI SA Gallucci, utilized C2 to conduct an additional controlled purchase of narcotics at Subject Premises A. Upon meeting at a prearranged location, C2's person and vehicle were searched and found free of any contraband or money. C2 was provided with $350.00 in

prerecorded serialized U.S. Currency from the WCDAO Drug Fund and followed to Subject Premises A. C2 was observed entering Subject Premises 2 but had contacted HSI TFO Ide, that they had to "help" Donnora Sr. with something before leaving. A delivery van used by Donnora Sr.'s business, Subject Premises B, parked in the driveway of Subject Premises A, was observed to travel to a remote location on Subject Premises B. C2 was then observed leaving the Subject Premises A and followed to a prearranged location and provided officers with a clear zip locked baggie containing eight circular shaped blue colored tablets of suspected Fentanyl, stating that they were purchased from Donnora Sr. utilizing the $350.00 in prerecorded serialized money from the Wyoming County Drug Fund ("WCDF"). While at Subject Premises A, C2 stated that Donnora Sr. requested his assistance in moving a large metal safe, which had previously contained large quantities of blue colored suspected fentanyl tablets, crystal methamphetamine, paraphernalia, money, and firearms from Subject Premises A to a shed, located in the vicinity of the fireworks warehouse and sales area, Subject B, which shared curtilage with Subject Premises A. The evidence purchased was retained by HSI TFO Ide and sent to the PSP

Crime Laboratory in Pittston Township, PA for testing. The lab results
revealed that the eight tablets contained heroin, fluorofentanyl, and
fentanyl.

54.    On or about September 20, 2023, C2 met with HSI TFO Ide
and Wyoming County Deputy Sheriff, Patrick Butkiewicz, at a
prearranged location. C2 stated that on September 17, 2023, Donnora
Sr. was taken by Pozzi to "Re-Up" and obtain a large quantity of blue
colored pills containing fentanyl and was in possession of the same for
sale. C2's person and vehicle were searched and found free of any
contraband and/or money. C2 was given $200.00 of prerecorded
serialized money from the WCDF and was followed to and seen entering
Subject Premises A and was then seen leaving Subject Premises A and
was followed to the pre-arranged location. C2 provided said officers with
six circular shaped blue tablets of suspected fentanyl and stated the
pills were $30.00 apiece. C2 was originally given seven pills but was
instructed by Donnora Sr. to consume one in Donnora Sr.'s presence. C2
asked Donnora Sr. about obtaining the $50.00 worth of Crystal
Methamphetamine they had paid for on September 7, 2023. Donnora
Sr. advised C2 that he would get the Crystal Methamphetamine from

his employee Mike Walters who was working on Donnora Sr.'s property later but C2 made subsequent arrangements to retrieve the Crystal Methamphetamine at a later date. The evidence purchased was retained by HSI TFO Ide and sent to the PSP Crime Laboratory for testing which revealed that the six tablets contained fentanyl.

55.    On October 17, 2023, C2 met with HSI TFO Ide, HSI SA Gallucci, Tunkhannock Borough Police SGT. Dustin Cokely, PSP Troopers Nate Lewis and Robert Richter, Bradford County Detective Michael Lamanna, and HSI SA Williams Gregory, Jesse Zermeno, and Philip Worthy to conduct a controlled purchase of suspected fentanyl from Donnora Sr. at Subject Premises A. C2's person and vehicle were searched and found free of any contraband and/or money prior to and after purchase. C2 stated that when they and Donnora Sr. last met, Donnora Sr. asked C2 to help bag and package a kilo of Cocaine recently obtained by Donnora Sr. and to be sold by Donnora Sr. A small recording device was placed on C2 to record the audio of the purchase. C2 was given $200.00 of prerecorded serialized U.S. currency from the WCDF and was followed to Subject Premises A. C2 was observed entering Subject Premises A and was observed exiting Subject Premises

A after approximately 5 minutes. SA Zermeno removed the recording device at the prearranged meeting location. C2 gave HSI TFO Ide eight blue tablets suspected to be fentanyl, stating that the contraband was obtained in exchange for the $200.00 of prerecorded serialized U.S. Currency. The evidence was retained by HSI TFO Ide and was sent to PSP Crime Laboratory where lab results revealed that the eight pills contained fentanyl.

56.    On November 9, 2023, at approximately 12:30hours, Internal Revenue Criminal Investigations ("IRS-CI") Special Agent Karyn Yanochko, HSI TFO David Ide and HSI SA Gallucci, conducted a follow up interview with W3 at the Wyoming County Courthouse ("WCC"). W3 stated that during their employment with Donnora Sr., they were instructed to erase the financials from the business computer for the year prior. Donnora Sr. then instructed W3 to re-enter all inventory manually. W3 advised that they did not delete the information as instructed by Donnora Sr. and that the information remained stored on the computer in the office in the Subject Premises A. W3 stated that cash obtained from fireworks business, Subject Premises B, as well as pill sales were comingled and deposited as such. W3 stated that when

Donnora Sr. needed a signature on a business document, he'd take the document to an individual names Rebecca Johnson or Rebecca Robinson, W3 was unsure of the exact name. HSI SA Gallucci conducted a query with the Pennsylvania Department of State, which showed business records of Fireworks by Tony Donnora Inc. named Rebecca Robinson as the president of the company. W3 has personally taken business documents to Robinson in the past and indicated that Robinson also conducts accounting for Donnora Sr.

57.    On or about December 11, 2023, at approximately 12:00 hours HSI TFO Ide, PSP Troopers Nate Lewis, Robert Richter, Kevin Hibson, Winkoski, Atherholt, and PSP Cpl Ned O'hara met with C2 at a prearranged location. C2 confirmed arrangements to purchase blue colored tablets from Donnora Sr. at Subject Premises A. C2 was searched and found free of any contraband or money and was then provided with $490.00 in prerecorded serialized U.S. currency from the WCDF and followed to Subject Premises A. A small recording device was placed on C2's person and C2 was driven by Trooper Lewis to Subject Premises A, and C2 was observed entering and then exiting Subject Premises A and then followed to the prearranged location. C2

provided the aforementioned officers with ten blue tablets suspected to be Fentanyl. The PSP Crime Laboratory revealed that the 9 tablets along with tablet fragments contained fentanyl.

58.    On or about January 31, 2024, at approximately 08:21 hours, HSI SA Gallucci, HSI TFO David Ide, HSI SA Zermeno, and Ethan Klersy, The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agents SarahJane Serafino and Jason Santo, and Wyoming County Sheriff Deputy, Butkiewicz met with C2 at a prearranged location. C2 was searched and found free of any contraband or money and was provided with a vehicle from the Wyoming County DA's office that was also found free of any contraband or money. C2 provided investigators with written and verbal consent to have a small recording device placed on C2's person and was then provided with $560.00 in prerecorded serialized U.S currency from the WCDF. $300.00 of the funds were to be used to purchase suspected explosive devices from Donnora Sr. at Subject Premises A and the other $260.00 were to be used to purchase a quantity of suspected Fentanyl pills. C2 was observed entering Subject Premises A empty handed at approximately 8:35 hours and was seen exiting Subject Premises A at

approximately 8:46 hours carrying a small grey plastic bag. C2 was followed to a prearranged meeting location and provided investigators with a grey plastic bag said to be obtained directly from Donnora Sr. which contained eighteen suspected illegal explosive devices, nine blue tablets, three boxes of consumer fireworks, similar to those sold in Donnora Sr.'s business, Subject Premises A. C2 stated that they had ingested two pills purchased and the original amount obtained from Donnora Sr. was 11. Lab results confirmed that the nine tablets contained heroin and fentanyl.

59.    On or about January 31, 2024, ATF Special Agent, SarahJane Serafino, a certified explosive specialist and bomb the x-rayed the suspected illegal explosive devices which revealed a granular like substance contained within each device. A preliminary flame test was conducted on the devices which reacted energetically. Based on her training and experience, the devices contained an energetic material similar to flash power, which is a federal regulated substance.

60.    On February 6, 2024, HSI SA Gallucci and HSI TFO Ide listened to audio obtained from the controlled purchase on January 31, 2024. C2 can be heard talking to another voice, said to be Donnora Sr.

who asked C2 "Alright what do you need here" and C2 answers "there's three for sticks," describing the $300.00 in prerecorded serialized U.S. currency from the WCDF to purchase suspected explosive devices described by C2 and Donnora Sr. as "Dynamite Sticks" and "$280.00 for happy" describing the $260.00 in prerecorded serialized U.S. currency from the WCDF. C2 mistakenly thought he was given $280.00 but instead given $260. "Happy" is an understood slang term between Donnora Sr. and C2 to describe the blue in color circular tablets. Donnora Sr. can be heard counting the money, finishing at $300.00 and states "that's for the quarters" describing the suspected explosive devices obtained. Donnora Sr. is heard counting the remaining $260.00 and then can be heard counting to eleven which was the original number of pills purchased prior to C2's consumption of two.

61.     On or about February 23, 2024, Jason Santo, a Special Agent with the ATF, conducted a database query of Donnora Sr.'s Business, Fireworks by Tony Donnora Inc. located at Subject Premises B, utilizing the ATF Federal Licensing System ("FLS"). FLS is the ATF database that tracks all applications for explosive licensees, possessors and responsible persons for an explosive business and found that no current

license to deal in explosives or Commercial/Display Fireworks existed. A
license under the name Gloria Donnora and Robery Kruzlik existed
prior to 1996 but was revoked along with a license under the same
names out of Dallas, PA that was also revoked in 2000. Donnora Sr.'s
website which can be found at fireworksbydonnora.com, which indicates
the following: "We shoot professional fireworks displays! Our entire
shows are like non-stop finales! 5-6 shells per second during the entire
show! A 12-15 min show costs approximately $1,000 including setup
and delivery costs. Call us to schedule today!" On or about February 19,
2024, HSI SA Gallucci conducted a foreign import search for Fireworks
by Tony Donnora Inc, which included a lengthy history of shipments
from China dating back to 2010. This history shows shipments
predominately from China involving what are labeled as "fireworks".

62.    A review of law enforcement databases and property records
confirmed Subject Premises A is adjoined to Subject Premises B. 250
Forkston Township, Pennsylvania is the location of Fireworks by Tony
Donnora, Inc. The properties are situated on a shared curtilage within a
large clearing. Subject Premises B is owned by Anthony Donnora Jr.,
while Subject Premises A is owned by Anthony Donnora Sr. As a result

of the aforementioned interviews, both Subject Premises A and Subject Premises B have been used to store and conceal regulatory explosives as well as narcotics. Subject Premises A and Subject Premises B are openly accessible to Donnora Sr., Donnora Jr., and all known associates to the organization.

### PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

a.   notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the property;

b.   the defendant properties be forfeited and condemned to the United States of America;

c.   the plaintiff be awarded its costs and disbursements in this action;

d.   the Court execute a Writ of Entry for the purposes of conducting an inspection and inventory of the property; and

e.     the court order any such other and further relief as this

Court deems proper and just.

Dated:  3/6/2024

Respectfully submitted,

GERARD M. KARAM
UNITED STATES ATTORNEY

By:     */s/* Sean A. Camoni
SEAN A. CAMONI
Assistant U.S. Attorney
235 N. Washington Avenue, Ste. 311
Scranton, PA 18503
Phone: 570-348-2800
Fax: 570-348-2037
sean.a.camoni@usdoj.gov

**<u>VERIFICATION</u>**

I, Special Agent Brandon T. Gallucci, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Department of Homeland Security-Homeland Security Investigations, that I have read the foregoing verified Complaint *in Rem* and know the contents thereof, and that the matters contained in the verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the United States Department of Homeland Security-Homeland Security Investigations.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: ___03/25/2024___

_____
Brandon T. Gallucci
Special Agent
U.S.D. of Homeland Security-Homeland Security Investigations